IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SINGLE MIND CONSULTING, INC.,

        Plaintiff,

v.

MORRISON PROPERTY INSPECTIONS, INC.,

        Defendant.

Case No. 3:25-cv-1191-MC

ORDER

MCSHANE, Judge:

        Plaintiff Single Mind Consulting, Inc. brings this breach of contract action against Defendant Morrison Property Inspections, Inc. Plaintiff entered into an Agreement to provide software development, design, and consulting services to Defendant. Now, two years after the Agreement ended, Plaintiff moves for a preliminary injunction enjoining Defendant from sharing Plaintiff's intellectual property with third parties who Plaintiff believes are its competitors. Mot. Prel. Inj. ECF No. 12. The Court presided over an oral argument and informed the parties it would grant Plaintiff's motion. This Opinion follows.

1 – Order

## BACKGROUND

In October 2021, the parties entered into a Master Services Agreement outlining their contract where Plaintiff would "develop an enterprise software platform for Defendants' property inspection business . . . ." Not. Rem. Ex. A ("Compl.") ¶¶ 5-6. One month later, the parties entered into an Amended and Restated Master Services Agreement (the "Agreement"). *Id.* ¶ 5. The parties agree that for most of the next two years, Plaintiff provided services and Defendant paid Plaintiff for those services.

In September 2023, the Agreement fell apart. Plaintiff alleges that Defendant ran into cash flow problems (but promised to find a way to make payments going forward). In contrast, Defendant argues that it terminated the Agreement due to the poor quality of Plaintiff's work.[1] Regardless of who terminated the Agreement, or why that party terminated the Agreement, Plaintiff provided no further services, and Defendant essentially provided no further payments. Despite this, Defendant kept the platform for nearly two more years. Until moving for injunctive relief, Plaintiff never asked for the return of the work product.

In July 2025, Defendant removed this action from state court. Plaintiff brings claims for breach of contract, breach of the implied duty of good faith and fair dealing, unjust enrichment, and action on account. Plaintiff alleges that under the Agreement, Defendant owes $232,158.42 for services Plaintiff provided.

Six weeks or so after Defendant removed this action, and nearly two years after the parties agree that the Agreement ended, Plaintiff moved for a preliminary injunction enjoining Defendant

---

[1] The Court notes what Defendant "argues" here merely because Defendant provides scant evidence on this—or any other—issue related to Plaintiff's motion for a preliminary injunction. While Defendant submits a letter it sent to Plaintiff dated October 25, 2023, and although that letter refers to Plaintiff's "ongoing, material, and uncurable breaches," the lone declaration submitted by Defendant under penalty of perjury merely states that Defendant sent the letter on that date (but does not declare that the statements contained in that letter are true). Morrison Decl. ¶ 3; Ex. A. As the Court referenced at oral argument, the timing of this letter, when viewed with the various contemporaneous emails between the parties submitted by Plaintiff, indicate that the letter is self-serving and of little evidentiary value.

2 – Order

from sharing Plaintiff's work product with third parties. Mot. Prel. Inj. Specifically, Plaintiff seeks an order forcing Defendant "to return the confidential information belonging to Plaintiff provided during the course of a contractual relationship and enjoining Defendants from any further use or distribution of confidential information and property belonging to the Plaintiff[.]" *Id.* 2.

## STANDARDS

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008). The mere possibility of irreparable harm is not enough. Rather, the plaintiff must establish that this harm is likely. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The court's decision on a motion for a preliminary injunction is not a ruling on the merits. *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

## DISCUSSION

Cort Buchholz, the founder and CEO of Plaintiff, submitted a declaration in support of Plaintiff's motion for a preliminary injunction. Buchholz Decl. ECF No. 13. That declaration Provides:

1. Plaintiff provided Defendant with services under the Agreement from October 2021 through September 30, 2023.
2. Plaintiff provided Defendant access to Plaintiff's work in order to collaborate in completing the final software product. "The work included [Plaintiff's] uncompiled code, its source code repository, the user interface assets, and all supporting documentation and specifications."
3. "Source code contains a company's intellectual property, trade secrets, and other confidential information. . . . Compiling source code, among other advantages, secures the source code so that the confidential information contained within is not accessible to unauthorized users. Source code repositories are used as an additional security measure, along with access control and source code security policies, to secure source code before it is compiled."
4. Plaintiff never provided Defendant with a finished software product.
5. Defendant retained possession of the unfinished software product.
6. The unfinished software product "contains [Plaintiff's] confidential information and intellectual property.

Buchholz Decl. 2-3.

Defendant does not dispute that it kept the unfinished software product or that the unfinished product contains confidential information in the form of uncompiled code. Rather than challenging the confidential nature of the unfinished product, Defendant argues that Plaintiff is not entitled to injunctive relief because: (1) the injunctive relief is not "of the same nature" as that sought in the Complaint; (2) Plaintiff is unlikely to succeed on the merits of its claims (because Plaintiff, not Defendant, failed to perform as required under the Agreement); and (3) Plaintiff fails to demonstrate an imminent threat of irreparable harm. Resp. 5-7. Each argument is meritless.

Plaintiff first argues that under *Pacific Radiation Oncology, LLC v. Queen's Med. Ct.*, 810 F.3d 631, 636 (9th Cir. 2015), injunctive relief is not available here because "it is not 'relief of the same nature as that to be finally granted' in this action for damages." Resp. 5. Although Defendant provides no analysis in support of this legal conclusion, the Court presumes that Defendant argues that this case is analogous to the facts in *Pacific Radiation*. There, defendant was the only local medical facility with an operating room licensed specifically for the use of "specialized radiation services to treat cancer." *Pacific Radiation*, 810 F.3d at 633. When that facility transitioned to only allowing member physicians to use its operating rooms, Plaintiffs, a group of non-member oncology physicians, brought claims of unfair trade practices against the Defendant. During discovery, the medical facility posted information consisting of the individual Plaintiffs' names, the names of the patients those doctors treated at the clinic, and other private medical information. Plaintiffs moved for injunctive relief, arguing the disclosures violated HIPPA. Because Plaintiffs' underlying claims were based on the medical center's unlawful trade practices, as opposed to allegations that the center had violated HIPPA, the district court denied Plaintiffs' motion. Noting that injunctive relief "is appropriate when it grants relief of the same nature as that to be finally granted," the Ninth Circuit affirmed because the "motion for relief was unrelated to the underlying complaint." *Id.* at 636.

In contrast, Plaintiff here brings claims based on Defendant's alleged breach of the Agreement. Plaintiff's motion for injunctive relief relates to, and is based on, Defendant's alleged violation of the Agreement. Specifically, Plaintiff argues that because the Agreement bars Defendant from sharing

4 – Order

Plaintiff's confidential information with third parties, and because Defendant appears to be doing precisely that, injunctive relief is appropriate. Unlike in *Pacific Radiation*, the relief requested here is not "entirely unrelated to the conduct asserted in the underlying complaint." *Id.* Instead, Plaintiff's requested injunctive relief is "of the same character as that which may be granted finally." *Id.* (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)).

Next, Defendant argues that Plaintiff is unlikely to succeed on the merits of its breach of contract claim, because Plaintiff breached the Agreement by continually providing shoddy work. The only evidence Defendant submits in support of this argument is the October 25, 2023, letter Defendant sent Plaintiff. In that letter, Defendant wrote that it "terminated the Agreement on September 22, 2023, because of [Plaintiff's] ongoing, material, and uncurable breaches. Morrison Decl. Ex. A. First, although Defendant provides a declaration stating that it sent the letter to Plaintiff on October 25, 2023, Defendant does not include a declaration stating the letter's statements are, in fact, true. This omission is telling. More telling, however, are the contemporaneous emails Plaintiff submitted in support of its motion. Those emails indicate that the statements in the letter are, at least at this preliminary stage, pure fiction.

For example, none of the emails reference any concerns from Defendant regarding the quality of Plaintiff's work. Additionally, at least at this preliminary stage, the emails indicate that Defendant simply ran out of money and could not pay Plaintiff's invoices. On September 20, 2023, Plaintiff inquired about nearly $30,000 in overdue invoices. The next day, rather than raise any quality concerns, Defendant explained that its founder was at a convention but would "be back tomorrow and will pay bills." Buchholz Decl. Ex. 6. The following day, on September 22, 2023, Defendant wrote to Plaintiff:

> Back in the office this morning. I wanted to follow up with you regarding the outstanding invoices. We are having cash flow issues and do not have the money to pay at this time. Be assured we will pay these invoices and are doing everything possible to raise additional funds. Are you available for a call?

*Id.* Ex. 7.

Plaintiff's CEO submitted a declaration stating that the parties had a phone call that day (September 22, 2023). *Id.* ¶ 15. As noted, Defendant's October 25, 2023, letter also states the parties had a phone call

5 – Order

that day. In contrast to Defendant's letter stating it terminated the Agreement for substandard work during that phone call, Plaintiff's declaration states that Defendant confirmed the debt during the call "and agreed to make regular payments of $1,000" going forward. *Id.* According to Plaintiff, Defendant "made no mention of any service quality issues or performance concerns." *Id.* Additionally, Plaintiff submitted a receipt indicating Defendant made a $1,000 payment on September 30, 2023. *Id.* Ex. 9. This payment, made one week after Defendant's letter indicated that Defendant terminated the Agreement, seems to sweep the legs out from Defendant's argument regarding which party, on what date, terminated the Agreement. The evidence Plaintiff submitted demonstrates that Plaintiff is likely to prevail on the merits of the underlying claim.[2]

Defendant also argues that because Plaintiff waited nearly two years after the Agreement ended to request the return of the confidential work product, Plaintiff is unable to meet the imminent harm requirement necessary for injunctive relief. *See* Def.'s Resp. 7 ("If the underlying information is as confidential as Plaintiff claims, it is unclear why Plaintiff waited so long to take any kind of action and is only now seeking to obtain a preliminary injunction."). This argument, however, ignores completely Plaintiff's reasonable justification for the delay. For instance, Plaintiff's attorney submitted a declaration stating that only during a June 18, 2025, conferral with defense counsel did Plaintiff learn that Defendant "had engaged between one and three competing providers to make a report detailing alleged problems with Plaintiff's work and recommendations for how to fix those issues and leave them with a useable finished product." Stump Decl. ¶ 2, ECF No. 14. The Court finds that: (1) any delay here is justified; and (2) Plaintiff moved with ample speed upon learning that Defendant was intent on distributing the confidential information at issue indicating a likely threat of imminent harm.

Finally, at oral argument, Defendant entirely changed course, arguing for the first time that the Agreement does not require Plaintiff to return or distribute the confidential work product. By failing to raise this argument in its responsive brief, however, Defendant waived this argument. *See United States v.*

---

[2] As indicated above, the Court's ruling at this preliminary stage is not a final ruling on the merits of Plaintiff's claims. *Sierra On-Line, Inc.*, 739 F.2d at 1422.

6 – Order

*Williams*, 693 F.3d 1067, 1073 (9th Cir. 2012) ("Because the government failed to raise this contention until oral argument, Williams was not provided a fair opportunity to respond comprehensively to the claim and this Court was deprived of the benefit of a robust debate informed by zealous advocacy. We therefore find the new argument waived, although the Government is free to reargue its merits before the district court on remand.") (cleaned up)).

      That said, Defendant's Agreement-based argument lacks merit. The Agreement clearly provides, in the section titled "Non-Disclosure," that "[e]ach party shall hold all Confidential Information in confidence and shall not disclose any Confidential Information to third parties nor use any Confidential Information for any purpose other than as required to perform under this Agreement or with prior written consent from Client." Buchholz Decl. Ex. 1, 9. Additionally, the Agreement explicitly provides that upon termination of any Statement of Work, "each party shall promptly return to the other party any Confidential Information in its possession or control belonging to that other party." *Id.* 7. At this stage, Plaintiff has demonstrated that the Agreement prohibits Defendant from sharing Plaintiff's confidential information with third parties.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

7 – Order

## CONCLUSION

Defendant does not rebut Plaintiff's evidence indicating that, in violation of the Agreement, Defendant is sharing Plaintiff's confidential source code with third parties. Defendant does not rebut Plaintiff's evidence indicating that Defendant's conduct constitutes an ongoing violation presenting a likelihood that Plaintiff's competitors have access to Plaintiff's confidential information. Plaintiff's motion for a preliminary injunction, ECF No. 12, is GRANTED. Defendant is enjoined, during pendency of this action, from any further distribution of confidential information and property belonging to the Plaintiff.[3]

IT IS SO ORDERED.

DATED this 29th day of September 2025.

                                                        _____s/Michael J. McShane_____
                                                        Michael McShane
                                                   United States District Judge

---

[3] Plaintiff also asks that the Court enjoin Defendant from using the confidential information. Pl.'s Mot. 13 (requesting court enter order "enjoining Defendants from any further use or distribution of confidential information and property belonging to the Plaintiff.") On this record, Plaintiff has not demonstrated the likely threat of imminent harm from allowing Defendant to use the information. After all, Plaintiff knew, for nearly two years, that Defendant possessed (and likely continue to use) Plaintiff's uncompleted product containing the unfinished source code. By waiting to move for injunctive relief until learning that Defendant had shared the source code with third parties, Plaintiff actions appear to imply that simply allowing Defendant to possess and use the unfinished product did not subject Plaintiff to an imminent threat of irreparable harm. Additionally, the record indicates that Defendant paid Defendant over $1,000,000 for services incurred in building the platform from scratch. At this stage, there is little evidence indicating what portion(s) of the unfinished product are paid for compared to what portions Defendant failed to pay for. In other words, it appears that Defendant paid a substantial sum for some product that equity indicates Defendant should be able to use. Therefore, at this time, the Court enjoins Defendant only from sharing the confidential information with third parties.

8 – Order